IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:05CV919 |
| $864,400.00 IN US CURRENCY, | ) | |
| and | ) | |
| $7,000 IN US CURRENCY, | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Tilley, Senior District Judge

This matter is before the Court on Plaintiff United States of America's ("United States" or "Government") Motion for Summary Judgment. [Doc. # 40.] For the reasons stated below, the United States' motion is granted.

I.

On June 21, 2005, Lieutenant Marvin Potter of the Davidson County Sheriff's Office (DCSO) stopped a 2005 Chevrolet Impala for failure to maintain a lane of travel. As Lt. Potter approached the passenger side of the car, he noticed that the driver, Xingyun Jiang, and the passenger, Steven Tan, were having difficulty rolling down the window. After rolling down the window five or six inches, Mr. Tan told Lt. Potter that the window was broken. Lt. Potter then asked

Mr. Jiang to step back to the patrol car. As he spoke with Lt. Potter, Mr. Jiang displayed signs of nervousness, including a nervous voice, stuttering, and looking straight ahead. Mr. Jiang told Lt. Potter that he lived in Indiana, but could not provide an address. Mr. Jiang said that he did not know where they were headed but that Mr. Tan had called him and asked him to drive for five or six hours.

After speaking with Mr. Jiang, Lt. Potter returned to the car and viewed a rental agreement, which showed that Mr. Tan had rented the Impala in Jamaica, New York, on June 18, 2005. The car was to be returned in Houston, Texas, on June 24, 2005. Lt. Potter noticed that Mr. Tan also exhibited nervous behavior, including stuttering, failing to make eye contact and breathing rapidly. Lt. Potter then issued a warning ticket to Mr. Jiang, and asked Mr. Tan for permission to search the car, which Mr. Tan granted.

As Mr. Tan exited the car, Lt. Potter noticed that the passenger door appeared to be improperly mounted. The door also felt heavier than it should have, and Lt. Potter saw that the door had been tampered with and the screws had obvious tool marks. Detective Jerry Soles, who had arrived at the scene to assist Lt. Potter, pulled the bottom of the passenger door panel back and saw packages wrapped in newspaper hidden inside the door.

Det. Soles then retrieved Xena, a dog trained in detecting narcotics, from his patrol car. Beginning at the left front driver-side fender, Xena began to scan the Impala in a counter-clockwise direction. Xena alerted to the presence of the odor

2

of narcotics by scratching the driver's door. Xena did not continue her scan of the exterior of the car.

Sergeant Thomas Varner then arrived on the scene with Radar, another dog trained in detecting the odor of narcotics. Radar also began a scan of the Impala at the left front driver-side fender. Radar alerted to the presence of the odor of narcotics by scratching at the left front fender wheel well and tire. Radar was then taken back to his original starting position and commanded to scan the Impala again. Radar once again alerted to the presence of the odor of narcotics at the left front fender wheel well. Continuing his scan of the car, Radar again alerted to the presence of the odor of narcotics, this time at the right front fender wheel well.

The car was then taken to the Davidson County garage, where the passenger door panel was removed. Hidden inside of the passenger door were thirty-one bundles wrapped in Chinese-language newspaper and United States Postal Service Express Mail tape. Each bundle contained U.S. currency bound with brightly colored rubber bands. The total amount of currency located in the door was $864,400.00. A search of Mr. Tan revealed $7,000.00 in U.S. currency bound in brightly colored rubber bands in his pants pocket. The currency was similar in appearance and denomination to the currency found in the car door. Another $1,000.00 was located on Mr. Tan, but was not bound by rubber bands. Mr. Tan told the DCSO officers that the $7,000.00 was a gift from his mother to be used as travel money for the trip to Houston.

3

Mr. Tan and Mr. Jiang were escorted to the DCSO to speak with law enforcement officers, and Mr. Tan told officers that he and Mr. Jiang could not speak English and would need an interpreter.[1] After speaking with law enforcement officers, Mr. Tan and Mr. Jiang signed abandonment forms indicating that they did not claim an ownership interest in the $864,400.00. Mr. Tan now asserts that he did not understand what he was signing. The $864,400.00 was then seized; the $7,000.00 was also seized based on its similarity to the currency found in the car. Mr. Tan and Mr. Jiang were released without charges.[2]

II.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine if a reasonable

---

[1] Mr. Tan's ability to speak English is disputed. The United States has submitted evidence that Mr. Tan has been in the U.S. for twenty years and took a citizenship exam in English. Mr. Tan has submitted an affidavit stating that he has limited English ability and did not really understand what happened during the traffic stop and subsequent events. Mr. Tan stated during his deposition, however, that he did in fact understand that Officer Potter wished to search his vehicle.

[2] The United States has also submitted evidence regarding a subsequent arrest of Mr. Jiang for alien smuggling, to which the United States wishes to connect Mr. Tan. As discussed below, however, because the currency is subject to forfeiture as proceeds traceable to an illegal drug transaction, there is no need for the Court to evaluate a potential connection to alien smuggling.

4

jury, based on the evidence, could find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Cox, 249 F.3d at 299. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. Anderson, 477 U.S. at 248; Cox, 249 F.3d at 299. Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. Anderson, 477 U.S. 242, 249 (1986). In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

III.

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the Government bears the initial burden of establishing, by a preponderance of the evidence, that the Defendant property is forfeitable.[3] 18 U.S.C. § 983; United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002). Under the

---

[3] The Civil Asset Forfeiture Reform Act ("CAFRA") was passed in 2000 and materially altered the burden of proof in all civil forfeiture cases commenced on or after August 23, 2000. See United States v. $10,000.00 in U.S. Currency, 348 F. Supp. 2d 612, 616 n.1 (M.D.N.C. 2004) (citing United States v. $80,180.00 in U.S. Currency, 303 F.3d 1182 (9th Cir. 2002)). Because this civil forfeiture proceeding was commenced in 2005, CAFRA applies. The only difference between pre-CAFRA and post-CAFRA case law in the Fourth Circuit is the government's heightened burden of proof; the government must now establish that property is subject to forfeiture by a preponderance of the evidence and not just a showing of probable cause. See United States v. One 1998 Tractor, 288 F. Supp. 2d 710, 713 (W.D. Va. 2003). Additionally, the United States is no longer permitted to rely on hearsay evidence to meet its burden. See United States v. .30 Acre Tract of Land, 425 F. Supp. 2d 704, 708 n.3, (M.D.N.C. 2006).

preponderance of the evidence standard, the Government must show that the relevant facts are more likely true than not. United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004). In this case, the Government contends the Defendant property is forfeitable either as proceeds traceable to the unlawful exchange of a controlled substance, see 21 U.S.C. § 881(a)(6), or as proceeds traceable to unlawful assistance to aliens to enter the United States, see 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(F), or both. Courts look to the totality of the circumstances to determine whether the Government has met its burden. United States v. Thomas, 913 F.2d 1111, 1115 (4th Cir. 1990) (noting that courts must avoid evaluating evidence in isolation in civil forfeiture determinations).

Here the United States has met its burden, showing by a preponderance of the evidence that the $864,400.00 and the $7,000.00 are subject to forfeiture as proceeds traceable to an illegal drug transaction.[4] Mr. Jiang and Mr. Tan were stopped while carrying a large amount of cash bundled in a particular manner and concealed in an empty cavity of their rental car. Mr. Tan attempted to conceal the fact of the hidden cash from Officer Potter by stating that the window would not roll down because it was broken. When questioned by DCSO officers, both Mr. Tan and Mr. Jiang were visibly nervous. The vague and highly implausible nature

---

[4] Because the United States has shown that the money is subject to forfeiture under 21 U.S.C. § 881(a)(6), the Court need not determine whether the Government has shown by a preponderance of the evidence that the money is subject to forfeiture based on an alleged connection to crimes involving aliens.

6

of Mr. Tan's eventual explanation for his possession of the currency also supports the Government's contention that Mr. Tan engaged in illegal activity. Moreover, Mr. Tan and Mr. Jiang were traveling between New York City, a known drug destination city, see United States v. $433,980 in U.S. Currency, 473 F. Supp. 2d 685, 690 (E.D.N.C. 2007), and Houston, Texas, a major drug trafficking hub, see Government's Exhibit B, ¶ 4. Finally, two separate dogs trained to detect the scent of narcotics alerted to the presence of the odor of narcotics to the car. This evidence, taken together, indicates that the currency was more likely than not proceeds traceable to an illegal drug transaction. See, e.g., id. (holding that large amount and odd packaging of currency, travel between drug trafficking hubs, false statements by Claimant, and two dog alerts made it more likely than not that currency subject to forfeiture).

Mr. Tan argues that the dog alerts should not carry weight because narcotics residue contaminates most currency in circulation. While there is considerable debate concerning the value of a dog alert to currency, compare United States v. $5,000.00 in U.S. Currency, 40 F.3d 846, 849 (6th Cir. 1994) (finding the evidentiary value of a dog alert to currency to be minimal) with United States v. $30,670.00, 403 F.3d 448 (7th Cir. 2005) (holding that dog alerts to currency have probative value), the question need not be decided in this case. Both dogs alerted to the presence of the odor of narcotics in an area of the car in which no

7

currency was found.[5]  Moreover, the United States has submitted affidavits documenting the training and reliability of both dogs.  Thus, three separate alerts by two different dogs, together with the circumstantial evidence discussed above, make it more likely than not that the $864,400.00 is subject to forfeiture as proceeds of a drug trafficking offense.

The $7,000.00 found on Mr. Tan's person is also subject to forfeiture as proceeds of a drug trafficking offense.  While Mr. Tan claims the $7,000.00 in his pocket was travel money, $7,000.00 is an abnormally large amount of money to carry on one's person.  Additionally, the $7,000.00 was bundled together with similar rubber bands and comprised of similar denominations to the $864,400.00 found in the door panel.  Mr. Tan carried an additional $1,000.00 in cash, not bundled similarly to the $864,400.00, which was returned to him.  The similarity in appearance to the money found in the car door, the abnormally large amount of cash, and the presence of additional, non-bundled cash, make it more likely than not that the $7,000.00 is subject to forfeiture as proceeds of a drug trafficking offense.

Because the United States has met its burden of showing that the currency is more likely than not subject to forfeiture, the burden shifts to Mr. Tan to show

---

[5] Radar also alerted to the front passenger wheel well near where the currency was hidden.  No evidence suggests that Radar alerted to this area because of the currency in the door.  Even if Radar had alerted to the currency, the alert to the passenger wheel well has probative value given the independent evidence of Radar's reliability.

8

that he is entitled to the Defendant property.  See .30 Acre Tract of Land, 425 F. Supp. 2d at 709.  A claimant may raise an "innocent owner" defense by proving (1) no knowledge of the conduct giving rise to the forfeiture; or (2) that upon learning of the conduct giving rise to the forfeiture, the claimant did all that reasonably could be expected under the circumstances to terminate such use of the property.  See 18 U.S.C. § 983 (d)(1).  This defense must also be proven by a preponderance of the evidence.  See id.; United States v. One Parcel of Property Located at 2526 Faxon Ave., 145 F. Supp. 2d 942, 950-51 (W.D. Tenn. 2001).

To support his innocent owner defense, Mr. Tan submits two affidavits in which he claims that three friends in Mexico lent him a total of $470,000.00 to buy and run a restaurant in Houston.  He claims that the remaining $400,000.00 found in the door was loaned to him by his father-in-law and the $7,000.00 in his pocket was given to him by his mother to cover travel expenses.  These stated transactions are not supported by any evidence other that Mr. Tan's own affidavits.  Mr. Tan has provided no other evidence as to the terms and conditions of the various loans and stated at his deposition that he did not sign any paperwork related to the loans.  Mr. Tan claims that the money lent to him was delivered in cash to a New York City hotel room by two separate couriers whose names he did not know.  In his deposition testimony, Mr. Tan could not name the restaurant he wished to buy or provide an address for it, admitted that he had never seen pictures of the restaurant and did not know the name of the seller.

9

Although he was prepared to purchase it in a cash-only transaction, Mr. Tan claims he knew only the price of the restaurant and no other information about it.

Mr. Tan's statements, without supporting evidence, do not create a genuine issue of material fact. "The mere allegation of a highly unlikely source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture." United States v. $10,000, 348 F. Supp. 2d 612, 617 (M.D.N.C. 2004) (quoting United States v. Two Parcels of Real Property Located in Russell County, 92 F.3d 1123, 1129 (11th Cir. 1996)); United States v. $50,720, 589 F. Supp. 2d 582, 584 (E.D.N.C. 2008) (holding that claimant's own affidavit, without more, did not establish a genuine issue of material fact). It is highly unlikely that Mr. Tan would receive loans worth nearly one million dollars without any documentation and no set terms or conditions. It is also highly unlikely that any person would travel with such a large amount of cash in order to purchase a restaurant, sight-unseen and knowing no more than the price of the restaurant. With no evidence to support Mr. Tan's story, a reasonable jury could not find in his favor. Thus, Mr. Tan cannot show by a preponderance of the evidence that he is an innocent owner of the Defendant currency, and summary judgment must be granted in favor of the United States.

IV.

For the foregoing reasons, the United States Motion for Summary Judgment [Doc. # 40] is GRANTED.

This, the 20th day of July, 2009.

    /s/ N. Carlton Tilley, Jr.
Senior United States District Judge